## MINERVA MERCANTILE CO. v. CAMERON COMPRESS CO.    (No. 7313.)*

Court of Civil Appeals of Texas. Austin.
Feb. 1, 1929.

Rehearings Denied Feb. 20, 1929.

W. A. Morrison, of Cameron, and E. A. Camp, of Rockdale, for appellant.

Henderson, Kidd & Henderson, Chambers & Gillis, and E. A. Wallace, all of Cameron, for appellee.

McCLENDON, J.  Suit by appellant against appellee for the agreed value of cotton destroyed by fire while in appellee's possession

*Writ of error refused.

as bailee under warehouse receipts in favor of appellant. The appeal is by Isaacs, a substitute plaintiff below, from a judgment in favor of appellee upon a special issue verdict.

The fire causing the loss was the same as in the Whittington [(Tex. Civ. App.) 268 S. W. 216, and (Tex. Com. App.) 280 S. W. 527] and Jacobs [(Tex. Civ. App.) 10 S.W.(2d) 1040] Cases. With the exception of a question of limitation noted below, most of the questions presented in the present appeal were adjudicated in the Whittington and Jacobs Cases. Our presentation and discussion of those questions will be brief, with references to the opinion in those cases for further elaboration.

Six independent grounds of negligence (the same as in the Jacobs Case) were submitted; four of these were found in favor of appellee and will not be further noted. Upon each of the remaining two (Nos. 2 and 5) the finding was in the affirmative as to the existence of negligence, but in the negative as to such negligence being the proximate cause of the loss. These issues were (2) failure to provide more than one watchman; and (5) defective fire prevention appliances.

Appellant contends that he is entitled to a judgment on each of these affirmative findings of negligence, upon the ground that proximate cause followed as a matter of law from the finding of negligence. We overrule propositions raising this issue, for the reasons stated in the Jacobs opinion.

█ Appellant contends, however, that the following agreement of the parties confers upon this court jurisdiction, under its authority to render such judgment as the trial court should have rendered, to determine factually the issue of proximate cause: "In the above styled and numbered cause, it is agreed by and between the plaintiff and defendant that the amount of the plaintiff's damage is $1,200.57, and that the issue of damage shall not be submitted to the jury, but if on the trial hereof, it shall appear from the evidence that the defendant is liable to plaintiff, then the amount of the judgment rendered in favor of plaintiff shall be said sum of $1,200.57, with 6 per cent. interest from October 10, 1920."

The manifest purpose of this agreement was to eliminate the necessity of proof of value of the cotton destroyed. Clearly it made no admission upon the issue of liability, and was not intended and should not be construed as affecting in any way the rights of the parties other than upon the one issue of the amount of the loss in case liability was established. We can give the agreement no other construction.

Error is assigned upon the refusal to submit each of the following four independent grounds of negligence: (1) Failure to install an automatic sprinkler system. (2) Failure to provide a warehouse within the meaning of R. S. art. 5568. (3) Failure to turn in the fire alarm. (4) Failure to cover the cotton with tarpaulins.

In the Whittington Case it was expressly held, both by this court and the Commission of Appeals, that the evidence was sufficient to require the submission of actionable negligence in the failure to install an automatic fire sprinkler. We therefore sustain the propositions raising this issue.

█ We overrule the proposition complaining of refusal to submit the issue of actionable negligence in not providing a proper warehouse. The definition in article 5568 reads: "A warehouse, within the meaning of this law shall be a house, building, or room in which any of the above mentioned commodities are stored and are protected from damage thereto by action of the elements."

Special issue refused reads: "Do you find and believe from the evidence that the defendant failed to store said cotton in a house, building or room so as to protect it from the action of the elements?" In connection with this issue, the further questions were requested: Whether such failure was negligence; and whether such negligence was the proximate cause of the loss.

The evidence showed that appellant's cotton was under one of several large sheds on the compress platform, which had a metal roof, but with open sides. There was other cotton which was stored in open spaces on the platform between the sheds and on the ground in the yards adjacent to the platform. The evidence showed, however, that the fire started in the cotton about the center of one of these sheds. The special issue requested assumed, and as introductory to the issue it was expressly stated, that it was appellee's duty to store the cotton in a building or room so as to protect it from the elements. The Uniform Warehouse Receipts Act (R. S. art. 5632) expressly provides the degree of care required of a warehouseman to be "such care * * * as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care."

█ As held in the Whittington Case, this statute was merely declaratory of the common law on that subject, and made the common-law rule so enacted the statutory criterion of liability. Tubbs v. Storage Co. (Tex. Civ. App.) 297 S. W. 670 (error refused). The sheds under which appellant's cotton was stored were such as are commonly used by compresses for storing cotton, at any rate the evidence raised that issue. Whether they met the requirements of the law must be determined by the application of article 5632, which prescribes the full measure of appellee's liability.

Special issue No. 1 fully covered the question of the method of storing the cotton. It reads: "At the time of said fire had the defendant failed to exercise ordinary care in placing, storing and keeping the plaintiff's

cotton consumed by said fire in the place and in the manner and under the circumstances shown by the evidence."

■ We do not think the evidence would support a finding of negligence in failing to turn in the fire alarm or in failing to cover the cotton with tarpaulins. The burden was upon appellant to establish such negligence. The evidence showed that while the regular telephone alarm was not given, the watchman shot his pistol several times as soon as he discovered the fire, and the fireman heard and promptly responded to this signal. The only evidence of the use of tarpaulins was where cotton was left in the open without shelter. Appellant's cotton was not so stored, and it conclusively appears that the failure to so cover the cotton in the open had nothing to do with the fire, as it originated in the cotton under shelter.

■ By cross-assignment of error appellee contends that the judgment should be affirmed upon its plea of limitation. This question arises from the following facts: The Minerva Company brought the suit April 9, 1922. March 17, 1923, it made a general assignment, and April 7, 1923, the cause of action was transferred by the assignee to Isaacs. May 17, 1923, the corporation was dissolved. March 28, 1928, Isaacs by an amended petition set up his ownership of the cause of action, and asked to be substituted as plaintiff. Appellee contends that the corporation ceased to be a legal entity when it was dissolved, or in any event (under article 1389) three years from that date, on one or the other of which dates the suit abated, and that, since Isaacs' right to intervene arose at the time of the assignment to him, his cause of action was barred.

The various questions which this contention involves have had extended consideration in numerous adjudicated cases. A discussion of these questions might be interesting, but we cannot see its useful purpose here, in view of the fact that we construe the following holding in Ferguson-McKinney Dry Goods Co. v. Garrett (Tex. Com. App.) 252 S. W. 738, as decisive of the issue:

"But, even if there had been a *dissolution, legally* speaking, of the original plaintiff company, in 1916, we do not think there was any *abatement* of the pending cause. Therefore no new question of limitation arose. The evidence shows that the old corporation, before the dissolution, assigned the cause of action to the new company, and the latter had a right to continue to prosecute the suit in the name of the old corporation or be substituted as party plaintiff. No hiatus existed. Assignee was not even a necessary party. See Lee v. Salinas, 15 Tex. 495; Bailey v. Laws, 3 Tex. Civ. App. 529, 23 S. W. 20; Trinity County Lumber Co. v. Holt (Tex. Civ. App.) 144 S. W. 1029; Bank of Alexandria v. Patton, 1 Rob. (40 Va.) 524."

The several statutes upon the effect of dissolution upon litigation are cited in the discussion which follows this holding.

Appellee contends that this holding was obiter. We do not so construe the opinion. The trial court's judgment was reversed, and the cause remanded for a new trial, and the opinion was a part of the mandate to the trial court, and this holding an express direction to the effect that, even if it should appear that there was in effect a dissolution, the issue of limitation could not be effectually urged.

This would seem to be the proper construction of an order of the Supreme Court in a remanded cause adopting only the judgment recommended by the Commission of Appeals. However, the Supreme Court has not left the matter to inference, but in the case above quoted from (as in remanded cases generally) expressly adopted the holdings of the Commission, as well as the judgment recommended. We overrule appellee's cross-assignments.

The trial court's judgment is reversed, and the cause remanded for a new trial.

Reversed and remanded.