ESTATES OF Robert D. ELKINS and Elizabeth P. Elkins, Rodney R. Elkins, Independent Executor, Priscilla Roughton, Joe Elkins and Roger Elkins, Appellants,

v.

COUNTY OF DALLAS, Dallas Community College District, Parkland Hospital District, Dallas County School Equalization Fund, City of Dallas and Dallas Independent School District, Appellees.

No. 05–03–00642–CV.

Court of Appeals of Texas, Dallas.

Oct. 26, 2004.

Rodney R. Elkins, Law Office of Rodney R. Elkins, Dallas, for Appellant.

Demetris A. Sampson, Edward Lopez, Jr., Linebarger Goggan Blair Sampson, LLP, Dallas, for Appellee.

Before Justices WHITTINGTON, LANG and LANG–MIERS.

## OPINION

Opinion By Justice LANG–MIERS.

Appellants Estates of Robert D. Elkins and Elizabeth P. Elkins, Rodney R. Elkins, Independent Executor, Priscilla Roughton, Joe Elkins and Roger Elkins ("Estates") appeal the trial court's judgment in favor of Appellees County of Dallas, Dallas Community College District, Parkland Hospital District, Dallas County School Equalization Fund, City of Dallas and Dallas Independent School District ("taxing authorities") for delinquent ad va-

lorem taxes, interest and penalties, attorney ad litem fees, and other costs. In three issues, the Estates complain that the evidence is neither legally nor factually sufficient to support the judgment because it did not create a prima facie case, the trial court erred in permitting the taxing authorities to disregard the Estates' terms and conditions of payments (which we interpret also as a contention that the evidence is legally and factually insufficient to support the judgment),[1] and the trial court erred in awarding the taxing authorities costs.

We hold that the evidence supporting the judgment is legally insufficient, and we reverse the trial court's judgment and render a take-nothing judgment against the taxing authorities.

## PROCEDURAL BACKGROUND

The taxing authorities sued Rodney R. Elkins in his capacity as independent executor of the estate of Robert D. Elkins and Elizabeth Elkins for unpaid taxes on property located at 9226 Mercer Dr., Dallas. They also sued Priscilla Elkins Roughton, Joe C. Elkins and Roger P. Elkins in their individual capacities. Attachments to the petition purported to be a Property Tax Notice and a Delinquent Property Tax Statement, neither of which was certified. Both documents showed "Rodney R Elkins et al" as owner of the property on Mercer Dr. Rodney R. Elkins, independent executor of the estate of Elizabeth P. Elkins, Prissy Roughton, and Roger P. Elkins filed an answer denying that the account on which the taxing authorities sued was accurate, correct, or "that it show[ed] all payments made to Plaintiffs or credits to which Defendants [were] entitled."

---

1. *See L.G. Mosley, and Jynnifer Mosley v. County of Dallas, et al.,* No. 05–01–00244–CV, 2002 WL 436658 (Tex.App.-Dallas March 21, 2002, pet. denied) (not designated for publication).

At trial, Plaintiffs' exhibits 1 through 7 were admitted. They included certified copies of Property Tax Notices, Transaction Histories, and Tax Pay Detail Inquiries. All of these documents showed "Rodney R. Elkins et al" as the owner of the property. The taxing authorities did not present any testimony.

Defendants' exhibits 1 through 33 were also admitted. These documents included letters from attorney Rodney R. Elkins to the taxing authorities; cancelled checks showing monies paid to the taxing authorities; a 1997 Property Tax Statement showing a partial payment; a Property Tax Receipt for 2000 taxes; and numerous charts prepared by the Estates showing taxes, penalties, interest and payments for the tax years 1996 through 2000. The Estates' evidence indicates that they directed the taxing authorities to apply certain payments to certain taxes. The Estates presented the testimony of Rodney R. Elkins.

### Issues on Appeal

In their first issue, the Estates complain that (1) the taxing authorities offered no evidence that the defendants below owned the real property in question during the years for which the ad valorem taxes were assessed, (2) the documents offered into evidence did not establish a prima facie case as to every material fact necessary to establish the taxing authorities' cause of action, and (3) the Estates rebutted any presumption created by the taxing authorities' evidence. In their second issue, the Estates assert that the trial court's finding that they owe the taxing authorities $3,845.72 in delinquent taxes, interest and penalties is unsupported by the evidence.

### SUFFICIENCY OF THE EVIDENCE

After a trial to the court, the trial court filed findings of fact and conclusions of law in support of its final judgment. We review fact findings for legal sufficiency under the same standards that are applied in reviewing evidence supporting a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). In evaluating legal sufficiency, we view the evidence in the light most favorable to the prevailing party. *See Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 24 (Tex.1994). To support a reversal, we must be persuaded that reasonable minds could not differ on the matter in question. *Id.* at 25 (*citing* William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 TEXAS L.REV. 515, 522–23 (1991)). On the other hand, we review the trial court's decisions involving mixed questions of law and fact under an abuse of discretion standard. *See El Paso Natural Gas Co. v. Minco Oil & Gas Co.*, 964 S.W.2d 54, 61 (Tex.App.-Amarillo 1997), *rev'd on other grounds*, 8 S.W.3d 309 (Tex. 1999). Conclusions of law are reviewed de novo as legal questions, and we afford no deference to the lower court's decision. *State v. Heal*, 917 S.W.2d 6, 9 (Tex.1996); *Treadway v. Shanks*, 110 S.W.3d 1, 5 (Tex. App.-Dallas 2000), *aff'd*, 110 S.W.3d 444 (Tex.2003).

In determining whether there is no evidence of probative force to support a factual finding, we must consider all of the evidence in the record in the light most favorable to the party in whose favor the verdict has been rendered, and we must apply every reasonable inference that could be made from the evidence in that party's favor. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). We will sustain a no-evidence point when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintil-

la, or (d) the evidence conclusively establishes the opposite of the vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex.1998). If the evidence offered to prove a vital fact is so weak that it does nothing more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and constitutes no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983).

If we find some evidence of probative value, we test the factual sufficiency of that evidence by considering all of the evidence which supports and which is contrary to the factfinder's determination. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989) (per curiam). Having done so, we should set aside the judgment only if the evidence that supports the finding is so weak or is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

### PRESUMPTION AND BURDEN OF PROOF

Tax Code section 33.47(a) addresses evidentiary concerns in delinquent tax cases and provides as follows:

> (a) In a suit to collect a delinquent tax, the taxing unit's current tax roll and delinquent tax roll or certified copies of the entries showing the property and the amount of the tax and penalties imposed and interest accrued constitute prima facie evidence that each person charged with a duty relating to the imposition of the tax has complied with all requirements of law and that the amount of tax alleged to be delinquent against the property and the amount of penalties and interest due on that tax as listed are the correct amounts.

Tex. Tax Code Ann. § 33.47(a) (Vernon 2001).

■■■ Once the taxing unit introduces the records described above, it establishes a prima facie case as to every material fact necessary to establish its cause of action. *Davis v. City of Austin*, 632 S.W.2d 331, 333 (Tex.1982). A rebuttable presumption arises that the taxes in question are due, delinquent and unpaid. *Flowers v. Lavaca County Appraisal Dist.*, 766 S.W.2d 825, 828 (Tex.App.-Corpus Christi 1989, writ denied). This presumption also establishes that the defendant owned the property on January 1 of the year for which the tax was imposed. *See Alamo Barge Lines, Inc. v. City of Houston*, 453 S.W.2d 132, 134 (Tex.1970); *GE Capital Corp. v. City of Corpus Christi, et al.*, 850 S.W.2d 596, 600 (Tex.App.-Corpus Christi 1993, writ denied).

■ After the taxing authority makes its prima facie case by introducing the tax records required by section 33.47(a), the burden then shifts to the taxpayer to show, by introducing competent evidence, that he has paid the full amount of taxes, penalties and interest, or that there is some other defense that applies to his case. *See Id.* Unless the taxpayer establishes independent reasons why the taxing authority should not recover, the taxing authority is entitled to judgment. *Hays Consolidated Ind. School Dist. v. Valero Transmission Co.*, 645 S.W.2d 542, 546 (Tex.App.-Austin 1982, writ ref'd n.r.e.).

The Estates argue that the exhibits offered by the taxing authorities were not sufficient to create the section 33.47(a) presumption of prima facie proof necessary to support a judgment for the taxing authorities. For purposes of this appeal we will presume, without deciding, that the taxing authorities' evidence was sufficient to establish a prima facie case, because our

holding on appellant's second issue is dispositive of the appeal.

## THE ESTATES' REBUTTAL OF PRIMA FACIE CASE

The Estates maintain that if the taxing authorities's evidence did, in fact, create a legal presumption, that presumption disappeared when the Estates offered evidence to rebut the taxing authorities's evidence. The premise for this argument is supported by *D & M Vacuum Service v. Zavala County Appraisal Dist.*, which explains the section 33.47(a) presumption as follows:

> The presumption places upon the party against whom it operates the burden of producing evidence sufficient to justify a finding of non-existence of the presumed fact.... Under this rule where the opponent produces sufficient evidence to justify a finding against the presumed fact, the presumption vanishes and the situation is the same as it would have been had no presumption been created. Further, the evidence which gave rise to the presumption remains to be weighed by the trier and accorded its full probative value, the same as if no presumption had been recognized.

*D & M Vacuum Service v. Zavala County Appraisal Dist.*, 812 S.W.2d 435, 438 (Tex. App.-San Antonio 1991, no writ) (*quoting* 1 R. Ray, Tex. Practice: Law of Evidence § 53 (1980)). Accordingly, if the Estates offered evidence sufficient to justify a finding against the presumed fact, the presumption disappeared as to that element of the taxing authorities's cause of action. The taxing authorities' evidence then had to stand on its own to prove that particular element.

### Ownership of the Property

▮ The Estates offered no evidence that they did not own the property on January 1 of the years for which the taxes were assessed. Consequently, the presumption of ownership was not rebutted, the taxing authorities were under no obligation to offer further evidence to prove ownership, and that element of the taxing authorities's cause of action was established. Further, non-ownership is an affirmative defense that must be pleaded or it is waived. *See* Tex. Tax Code Ann. § 42.09(b) (Vernon 2001) (lack of ownership is an affirmative defense); Tex.R. Civ. P. 94 (affirmative defenses must be pleaded); *see also Land Title Co. of Dallas, Inc. v. F.M. Stigler Inc.*, 609 S.W.2d 754, 756 (Tex.1980) (holding that if an affirmative defense is not pleaded, it is waived); *Barnett v. Coppell N. Texas Ct., Ltd.*, 123 S.W.3d 804, 816 (Tex.App.-Dallas 2003, no pet.) (holding that if an affirmative defense is not pleaded, it is waived). Because the Estates did not plead non-ownership as an affirmative defense, they waived error on that issue. We overrule issue one.

### Application of Payments

We must now determine if the Estates offered evidence that rebutted the taxing authorities' statement of overdue taxes, penalties, and interest. The Estates offered proof that they tendered checks to the tax office, most with a cover letter specifying the amount of taxes being paid to each taxing authority. One such letter instructed the tax office as follows:

> Attached to this letter is my check number 200, in the amount of $591.41.
>
> We direct that you apply this payment as follows:
>
> $268.29 to 1997 Dallas County taxes;
>
> $ 8.41 to 1997 Dallas County School Equalization fund taxes
>
> $ 66.74 to 1997 Dallas County Community College District taxes; and,
>
> $247.97 to 1997 Dallas County Hospital District taxes.

Should any sum remain after each of the foregoing taxing authorities' taxes have been paid for 1997, please apply any remaining amount to taxes (but not penalty, interest, or fees) owing to Dallas County for any other tax year.

A check was attached to this letter and in the memo area the maker of the check instructed, "97 taxes—apply per letter."

Rodney Elkins, the executor of the Estates, testified at trial that every time he sent a check, he instructed the taxing authorities how to apply the funds. The taxing authorities cashed the checks instead of refusing tender. He produced ledgers which showed the taxes assessed each year, payments made, and penalty and interest accrued. Elkins testified that he got the yearly tax assessment figure either from a tax statement or from the tax office. He also stated that he computed the penalty and interest as prescribed by the tax code. Elkins's ledgers showed that all taxes, penalties, and interest had been paid in full, and that the Estates were entitled to a refund. Elkins asserted that the taxing authorities were required by law to apply the Estates' payments as he instructed, and as shown on his ledgers. The Estates also offered into evidence a 1997 Property Tax Statement issued by the City of Dallas that showed the taxes computed for the City of Dallas and the D.I.S.D. This statement was stamped "part pay" by the City of Dallas tax office.

After considering Elkins' testimony, his ledgers, and the 1997 tax statement, we hold that the Estates rebutted the presumption that the taxing authorities correctly applied the Estates' payments.[2]

## THE TAXING AUTHORITIES' EVIDENCE

Because the Estates rebutted the presumption that the taxing authorities correctly applied the Estates' payments and that the Estates had not paid the full amount of taxes, penalties and interest, the burden then shifted to the taxing authorities to show that the payments were, in fact, applied correctly and how much the Estates owed the taxing authorities. We hold that the evidence offered by the taxing authorities to prove its cause of action constitutes no more than a mere scintilla.

The taxing authorities did not produce a witness or present testimony. Instead, they presented various written documents as exhibits to support their position. Plaintiff's Exhibit 1 is entitled "Property Tax Notice" and is dated November 6, 2002. It purports to show the tax due, penalty/interest, and fees for each of the taxing entities for the years 1997 through 2000. For example, it shows that the following taxes are due to the taxing authorities for the year 1997: Hospital District, $37.09; Dallas Independent School District, $731.68; Dallas Community College District, $9.98; School Equalization Fund, $1.26; Dallas County, $40.11; and the City of Dallas, $488.86. The grand total for all the years is $3,845.72, the amount of the judgment against the Estates. If we compare the City of Dallas amount with the

2. The Estates urge us to recognize the concept of "accord and satisfaction" in the context of tax cases, thus requiring the taxing authorities to apply funds as directed simply because they cash or deposit a check that gives instructions on how to apply the funds. The Estates cite *City of Houston v. First City*, 827 S.W.2d 462 (Tex.App.-Houston [1st Dist.] 1992, writ denied) in support of their position. We decline to adopt this holding, however, because the statute clearly describes the circumstances under which a taxing authority is required to follow the instructions of a taxpayer as to the precise distribution of funds. These "circumstances" do not include the simple act of depositing or cashing a check. In tax cases, the tax code abrogates the common law concept of "accord and satisfaction."

1997 property tax statement offered into evidence by the Estates, we know that Dallas actually assessed a tax of $869.76 for the year 1997, an amount significantly different from the $488.86 shown in the property tax notice.

| TID | Year | Receipt | Tran | Base Levy | Pen/Int | Attorney | Total | Date | Type |
|---|---|---|---|---|---|---|---|---|---|
| DA | 1997 | 1200349240 | TPPA | −96.40 | −37.60 | −20.10 | −154.10 | 000428 | CK |
| DA | 1997 | 1990453968 | TPPA | −343.04 | −82.33 | −63.80 | −489.17 | 990131 | CK |
| DA | 1997 | 1990453968 | TPVA | 343.04 | 82.33 | 63.80 | 489.17 | 990206 | |
| DA | 1997 | 1990609384 | TPPA | −180.88 | −52.45 | −35.00 | −268.33 | 990630 | CK |
| DA | 1997 | 1990636218 | TPPA | −51.19 | −15.87 | −10.06 | −77.12 | 990831 | CK |
| DA | 1997 | 2000281796 | TPPA | −52.43 | −29.88 | −12.35 | −94.66 | 011024 | CK |
| DC | 1997 | 14925792 | TPPA | −182.27 | −51.03 | −34.99 | −268.29 | 990531 | CK |

| TID | Year | Receipt | Tran | Base Levy | Pen/Int | Attorney | Total | Date | Type |
|---|---|---|---|---|---|---|---|---|---|
| DC | 1997 | 14925792 | TPPA | −182.27 | −51.03 | −34.99 | −268.29 | 990531 | CK |
| DC | 1997 | 2000249105 | TPPA | −41.60 | −23.71 | −9.80 | −75.11 | 011004 | CK |
| DC | 1997 | 2000281796 | TPPA | −4.31 | −2.45 | −1.01 | −7.77 | 011024 | CK |
| DCS | 1997 | 14925792 | TPPA | −5.70 | −1.60 | −1.10 | −8.40 | 990531 | CK |
| DCS | 1997 | 2000249105 | TPPA | −1.31 | −.74 | −.31 | −2.36 | 011004 | CK |
| DCS | 1997 | 2000281796 | TPPA | −.14 | −.08 | −.03 | −.25 | 011024 | CK |
| DO | 1997 | 14925792 | TPPA | −45.34 | −12.69 | −8.71 | −66.74 | 990531 | CK |

There are two additional pages reflecting similar data for the year 1997. Adding the total amounts applied to the base levy, penalties/interest, and attorney fees, it appears as though the Estates paid either $3,329.74 or $4,273.38 [3] for the year 1997. The taxing authorities failed to offer any testimony or other evidence to explain how to interpret the transactions histories; consequently, the transaction histories constitute no evidence of how the taxing authorities applied the Estates' payments.

The taxing authorities also offered into evidence a "Tax Pay Detail Inquiry" for each of the disputed years. The 1997 document reflects that the taxing authorities applied $3,623.95 to the taxes assessed against the Estates for the year 1997. Similar information can be garnered from the documents for each of the remaining

Plaintiff's Exhibits 4 through 7 contain documents entitled "Transaction History." There is one for each year that is in dispute. The transaction history for 1997 shows the following information:

tax years in dispute. These documents do not reflect the amounts applied to each individual taxing authority. Additionally, the $3,623.95 documented as being applied to the Estates's 1997 taxes is different from the amount shown in the 1997 transaction history, $3,329.74 or $4,273.38.[4]

### Discussion

■ The question before us is whether the above-cited evidence is legally sufficient to support the trial court's finding that the Estates owe the taxing authorities $3,845.72 in past due taxes, penalties, interest and fees. As illustrated above, it is not possible to understand the documentation offered by the taxing authorities to prove its case. The taxing authorities did not call a witness to testify that the calcu-

---

**3.** The amount depends on whether or not we include those totals that seemingly duplicate a previously reported transaction.

**4.** Again, the figure depends on whether or not we include those amounts that seemingly duplicate a previously reported transaction.

lations were correct and made in accordance with the law. Neither was there testimony as to how the documents related to and supported each other, the meaning of the codes and abbreviations on each of the documents, or how the penalties, interest and fees were calculated. Most importantly, the taxing authorities did not offer any testimony about how the Estates' payments were applied.

 When a taxing authority's prima facie case is rebutted, the documentation originally offered into evidence does not disappear. It must be considered in a legal sufficiency analysis. But it will not be accorded greater weight simply because it previously created the statutory presumption. *See Alamo Barge Lines*, 453 S.W.2d at 133–34 (holding that after taxpayer rebutted taxing authority's prima facie case that taxpayer owned tugboats, taxing authority failed to sustain its burden of introducing evidence to refute taxpayer's defensive evidence of nonownership); *GE v. City of Corpus Christi*, 850 S.W.2d 596, 601 (Tex.App.-Corpus Christi 1993, writ denied) (holding that when prima facie proof of secured party's possession of property rebutted, tax roll listing the units in question was no evidence of possession). In this case, once the presumption that the taxing authorities correctly applied the Estates' payments disappeared, there is no evidence of how the taxing authorities applied the Estates' payments—whether as directed by the taxpayer, or whether in some other manner. Consequently, there is no evidence that the amount the taxing authorities contended were owed by the Estates is correct.

After reviewing the evidence that supports the trial court's determination, we hold that the evidence offered to prove how the calculations were made is no more than a mere scintilla—that it is so weak that it does nothing more than create a mere surmise or suspicion of its existence—and is thus legally insufficient to support the judgment. We sustain appellant's issue as to legal sufficiency.

## CONCLUSION

Although the Estates maintain that they actually paid more taxes than were due, they did not file a counterclaim against the taxing authorities seeking a refund. Accordingly, we reverse and render judgment for the Estates. Because we have disposed of this appeal on the basis of legal insufficiency, it is unnecessary that we address the Estates' other issues.